**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANTHONY MELEO, et al.,<br><br>Petitioner-Plaintiffs,<br><br>v.<br><br>ANTONY BLINKEN, Secretary of U.S. Department of State, et al.,<br><br>Respondent-Defendants. | Civil Action No. 23-03495 (RK)<br><br><br>**OPINION** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon a Motion to Dismiss (ECF No. 12) filed by the Office of the United States Attorney on behalf of Respondent-Defendant Antony Blinken, the United States Secretary of State, and Respondent-Defendant Julie M. Stufft, the Deputy Assistant Secretary for Visa Services in the Bureau of Consular Affairs (together, the "Defendants"). The Motion seeks to dismiss Petitioner-Plaintiff Anthony Meleo's ("Meleo") and his fiancé, Petitioner-Plaintiff Azadeh Barazandeh's ("Baranzandeh," and together, the "Plaintiffs") Petition for Writ of Mandamus and Complaint (ECF No. 1).

The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**.

## I.    BACKGROUND

This matter is brought pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* and 22 C.F.R. §§ 41, 42 *et seq.*, requesting relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) and § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. This action involves a dispute pertaining to the refusal of Plaintiff Azadeh Barazandeh's application for a K-1 visa. (ECF No. 1 ¶ 30.)

Specifically, Plaintiff Meleo, a U.S. Citizen, brings this Petition for Writ of Mandamus and Complaint (together, the "Complaint") on behalf of his fiancé, Barazandeh, an Iranian citizen. (ECF No. 1 at 2.)[2] The Complaint seeks to compel the Defendants "to issue a final decision on" Baranzandeh's application for a K-1 visa, a temporary nonimmigrant visa. (ECF No. 1 ¶¶ 1–2, 23.)

On May 24, 2021, the United States Citizenship and Immigration Services ("USCIS") received Plaintiffs' Form I-129F (Petition for Alien Fiancé) requesting Baranzandeh be classified as a K-1 nonimmigrant. (ECF No. 1 ¶ 78; ECF No. 1-1 at 1.) On August 2, 2022, Plaintiffs' Form I-129F was approved by USCIS. (*Id.*) A couple of months later, Plaintiffs completed the online nonimmigrant visa application, the Form DS-160. (ECF No. 1 ¶¶ 4, 79; ECF No. 1-2 at 1.)

---

[1] While the Motion was pending, Plaintiffs submitted a Notice of Supplemental Authority in support of their Opposition to Defendants' Motion to Dismiss ("Opposition"). (ECF No. 14.) Defendants have not moved to strike, and, in any event, this is proper because a plaintiff may, without advancing new arguments, "advise the court of [] relevant authority through a Notice of Supplemental Authority" "after the party's brief has been filed." *See Patlan v. BMW of N. Am., LLC*, No. 18-09546, 2024 WL 1328012, at *4 n.7 (D.N.J. Mar. 28, 2024) (citation omitted).

[2] As the Complaint at ECF No. 1 is missing page numbers, the Court uses PDF page numbers when citing to parts of the Complaint not contained in its paragraphs.

Following that, on November 17, 2022, Baranzandeh appeared for a K-1 visa interview at the U.S. Embassy in Yerevan, Armenia.[3] (ECF No. 1 ¶¶ 5, 81; ECF No. 1-2 at 1.)

At the end of her visa interview, Baranzandeh was given a letter stating that her application was "refused under Section 221(g) of the U.S. Immigration and Nationality Act (INA)." (ECF No. 1 ¶ 7; ECF No. 1-3 at 2.) The letter requested additional documents, including a copy of her passport and a "statement of intent." (ECF No. 1-3 at 1–2.) The letter indicated the application was refused for administrative processing and "will remain refused while undergoing such processing." (*Id.*) It further stated that "[r]efusal may be overcome when the requested documents are provided and/or administrative processing is complete." (*Id.* at 2.) According to the Complaint, this "temporar[y] refus[al]" was for the application to "undergo mandatory administrative processing."[4] (ECF No. 1 ¶¶ 6–7, 82.)

Plaintiffs allege that they were also asked to fill out Supplemental Questions for Visa Applications (Form DS-5535), which Baranzandeh submitted the next day, November 18, 2022. (ECF No. 1 ¶¶ 8, 9, 83, 84.) From that date until presumably the present time, Plaintiffs' visa application has remained in the same status. (*Id.* ¶¶ 9–11, 85–87.)

Frustrated with the "perpetual state of administrative uncertainty," Plaintiffs bring this suit. Defendants move to dismiss this Complaint (i) for lack of subject matter jurisdiction over the Mandamus Act claim and the APA claims, (ii) under the doctrine of consular nonreviewability,[5]

---

[3] Baranzandeh's visa interview took place in Armenia because the United States has no consular relationship with Iran.

[4] According to the State Department website, a refusal under INA 221(g) for administrative processing "means the applicant did not establish eligibility for a visa," but "that additional information from sources other than the applicant may help establish an applicant's eligibility for a visa." *See* U.S. Dep't of State, *Administrative Processing Information*, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited Sept. 27, 2024).

[5] Although invoked by the parties in the briefing, the doctrine of consular nonreviewability is not relevant here because Plaintiffs are not seeking judicial review of a consular officer's denial of a visa. *See Dep't of*

and (iii) for failure to state a claim under the APA for unreasonable delay. (*See* ECF No. 12 at 1–2.)

The Court acknowledges the trying situation of Plaintiffs and the difficulties associated with partners living abroad, a problem that is undoubtedly exacerbated with individuals living in countries with civil unrest. Unfortunately, even where there are "painful consequences of delay" in our immigration system, as there are here for Plaintiffs, the Court can only rule based on neutral application of the law to the facts. Accordingly, the Court finds that while Defendants are required to review and adjudicate nonimmigrant visa applications, they are afforded wide discretion in doing so. This is especially true when it comes to timing of the adjudication. This wide discretion with respect to timing is what puts these claims outside the Court's subject matter jurisdiction.

In addition to the lack of subject matter jurisdiction, Plaintiffs' Complaint fails to plead standing because Defendants' November 18, 2022 refusal of Plaintiffs' nonimmigrant visa application fully discharged their duty to adjudicate it. This means Plaintiff has not properly alleged an injury in fact or relief the Court can provide.

Even assuming *arguendo* that the Court has subject matter jurisdiction over the Complaint and the Plaintiffs have standing, the Complaint would still be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because an unreasonable delay in adjudication is not alleged here under the *TRAC* factors.

---

*State v. Munoz*, 144 S. Ct. 1812, 1820 (2024). In other words, Plaintiffs are not seeking to have the Court review the merits of a consular officer's final decision; instead, they argue a final decision was never made. (ECF No. 12-3 at 10–13.)

## II.    **LEGAL STANDARD**

### A.    SUBJECT MATTER JURISDICTION

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a complaint for lack of subject matter jurisdiction. This Court must first ascertain whether a Rule 12(b)(1) motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018). A facial attack considers a complaint in the light most favorable to the plaintiff that nevertheless fails to invoke subject matter jurisdiction. *See id*. A factual attack is different. It involves challenging the truth of the jurisdictional allegations.

Where, as here, Defendants bring a facial attack of the Court's subject matter jurisdiction, the Court reviews the well-pleaded facts in the complaint in the light most favorable to Plaintiffs. *See Jamoussian v. Blinken*, No. 21-10980, 2022 WL 538424, at *1 (D.N.J. Feb. 23, 2022) (citing *Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008). Accordingly, the Court "review[s] the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Manivannan v. United States Dep't of Energy*, 42 F.4th 163, 169 (3d Cir. 2022) (internal quotation and citation omitted). Because federal courts are courts of limited jurisdiction, there is a rebuttable presumption that a case lies outside its jurisdiction. *See G. W. v. Ringwood Bd. of Educ.*, 28 F.4th 465, 468 (3d Cir. 2022) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus Plaintiffs must show that this Court has subject matter jurisdiction to survive the Rule 12(b)(1) Motion. *Potter v. Cozen & O'Connor*, 46 F.4th 148, 155 (3d Cir. 2022) (citation omitted).

## B.    STANDING

Courts have an obligation to assure they have jurisdiction, including considering the issue of standing *sua sponte* if not raised by the parties. *See Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020). Standing is comprised of "injury in fact, causation and redressability." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020). A plaintiff has the burden to prove they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 287 (3d Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

## C.    FAILURE TO STATE A CLAIM

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In evaluating the sufficiency of a complaint, the court accepts all the well-pleaded factual allegations as true and draws all reasonable inferences in favor the plaintiff. *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

## III.    <u>DISCUSSION</u>

## A.    SUBJECT MATTER JURISDICTION

Defendants seek to dismiss this Complaint under Rule 12(b)(1) for lack of jurisdiction over the Mandamus Act claim and the APA claim. (*See* ECF No. 12 at 5.) Because jurisdiction is always

a threshold issue, the Court will first consider whether Plaintiffs have met their burden of establishing this Court's jurisdiction over their claims. Plaintiffs have not met their burden because the INA does not require nonimmigrant visa applications to be adjudicated within a certain time and Plaintiffs have not alleged any improper behavior, deliberate inaction, or bad faith. Thus, the Court lacks subject matter jurisdiction.

The Mandamus Act empowers courts to issue writs of mandamus "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of "mandamus is a drastic one, to be invoked only in extraordinary situations." *Semper v. Gomez*, 747 F.3d 229, 251 (3d Cir. 2014); *see also Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (describing a writ of mandamus as "one of the most potent weapons in the judicial arsenal"). Further, the writ of mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief." *Temple Univ. Hosp., Inc. v. Sec'y United States Dep't of Health & Hum. Servs.*, 2 F.4th 121, 132 (3d Cir. 2021) (quoting *Heckler v. Ringer*, 466 U.S. 602, 627 (1984)).

Before a court can assess the merits of a mandamus action, the litigant must pass a jurisdictional bar. *See Temple Univ. Hosp., Inc.*, 2 F.4th at 132. Ordinarily, to qualify for mandamus, the party seeking a writ of mandamus must meet three elements: "(1) a clear and indisputable right to relief, (2) that the [G]overnment agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Id*. Although each element is required for a court to have jurisdiction to issue the writ, a court can, nevertheless, decline to issue a writ under its discretion. *See Cheney*, 542 U.S. at 381.

In terms of the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is

entitled to judicial review thereof." 5 U.S.C. § 702. However, § 701(a) of the APA precludes judicial review when prescribed by the statute or "agency action is committed to agency discretion by law." § 701(a). As the Supreme Court recently noted, the "INA[] does not authorize judicial review of a consular officer's denial of a visa." *Muñoz*, 144 S. Ct. at 1820. This is the doctrine of consular nonreviewability and only bars judicial review of agency *action*. *Id*.

Reviewing agency *inaction* is different. Under Section 706(1) of the APA, federal courts "shall compel agency action unlawfully withheld or unreasonably delayed." § 706(1); *see also id.* § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.,* 542 U.S. 55, 64 (2004) (emphasis in original). A court only has subject matter jurisdiction to compel agency action "when the agency is compelled by law to act *within a certain time period*." *Azam v. Bitter*, No. 23-4137, 2024 WL 912516, at *7 (D.N.J. Mar. 4, 2024) (emphasis added) (quoting *Kale v. Mayorkas*, No. 21-08095, 2021 WL 2652124, at *4 (D.N.J. June 28, 2021)); *see also Norton*, 542 U.S. at 65. However, even without a specified deadline under law, the Court has jurisdiction if plaintiff alleges improper behavior, "deliberate inaction[,] or bad faith on the part of the State Department in processing [an] individual visa petition." *See Azam*, 2024 WL 912516, at *8 (citing *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019)).

To have jurisdiction under the APA or Mandamus Act for an unreasonably delayed action, a plaintiff must make a two-part showing. *First*, they must identify a mandatory, nondiscretionary duty. *See Azam*, 2024 WL 912516, at *7 (citing *Norton*, 542 U.S. at 64). *Then,* they must point to

"provisions establishing a specific time frame" for adjudicating visa application. *Id*. (citing *Kale*, 2021 WL 2652124, at *4) (internal quotation omitted).[6]

With respect to their Rule 12(b)(1) motion, Defendants argue that this Court lacks jurisdiction because "Plaintiffs cannot establish any of the three elements for mandamus relief" and Plaintiffs have not "show[n] a statutory or regulatory time period specified within which a visa application must be adjudicated." (ECF Nos. 12 at 10, 12-9 at 6; *see also* 12 at 8 ("[T]here is no deadline under federal law by which a consular officer must adjudicate, let alone re-adjudicate, a visa application.").) Plaintiffs argue that all three elements of a mandamus writ are satisfied, and the Complaint establishes Defendants are under an obligation to perform a full adjudication of their visa application in a timely manner. (*See* ECF No. 12-3 at 6, 15.) Further, Plaintiffs assert APA claims are appropriate to compel "final decisions on matters before them within a reasonable time" even "when no specific time frame for completion is mandated by statute." (*Id*. at 15.)

### 1.    Non-Discretionary Duty

First, the Court must determine whether Defendants have a mandatory, non-discretionary duty to adjudicate a visa application in the first instance. *See Azam*, 2024 WL 912516, at *7 (citing *Norton*, 542 U.S. at 64).

Under the plain language of the statute, Defendants have a mandatory, nondiscretionary duty to adjudicate visa applications pursuant to §§ 1202(b) and (d). Section 1202(d) of the statute provides: "All nonimmigrant visa applications *shall* be reviewed and adjudicated by a consular officer." § 1202(d) (emphasis added); *see also* § 1202(b) (providing the same for immigrant visa

---

[6] Consistent with a majority of courts in this District, the Court will consider the Mandamus Act claim subsumed by the APA claims. *See, e.g.*, *Bokhari v. Bitter*, No. 23-1947, 2024 WL 244211, at *1 (D.N.J. Jan. 22, 2024) ("Mandamus Act claim is subsumed by his APA claim" and thus "duplicative"); *see also Azam*, 2024 WL 912516, at *4 ("Where, as here, a plaintiff seeks to compel agency action unlawfully withheld or unreasonably delayed, courts treat claims under the APA and Mandamus Act co-extensively.")

applications).[7] As aptly put by the Honorable Renée M. Bumb, U.S.D.J. this precise language: "[t]hose words mean what they say." *Azam*, 2024 WL 912516, at *6. Without Supreme Court or Third Circuit case law to the contrary, the plain language of § 1202 governs. Therefore, § 1202 prescribes a non-discretionary duty and requires that visa applications be reviewed and adjudicated by a consular official." *Azam*, 2024 WL 912516, at *6 (citing § 1202).

### 2.    Time to Discharge Duty

Now that the Court has concluded Defendants have a non-discretionary duty to adjudicate a visa application, the Court turns to whether that duty must be undertaken by a certain time, or—as Plaintiffs assert—in a "reasonable" amount of time. Because Plaintiffs have not put forward evidence of bad faith, deliberate inaction, or improper behavior, Plaintiffs cannot "cannot use Section 1202[] to leapfrog the line given the discretion inherent in the visa adjudication process." *Azam*, 2024 WL 912516 at *7 (internal citations omitted).

The parties do not dispute the lack a mandated time for adjudicating visa application but rather differ on what that omission means for the Court's jurisdiction to compel Government action. (*Compare* ECF No. 12 at 10 (Defendants argue that without an explicit statutory deadline, Plaintiffs cannot show an "unlawfully withheld" action, and thus this Court lacks jurisdiction), *with* ECF No. 12-3 at 15–16 (Plaintiffs argue that even without an explicit statutory deadline, Defendants must adjudicate their visa application with a reasonable amount of time).)

To be sure, "nothing in federal law governing consular officials' . . . adjudication of visa applications imposes a particular deadline." *Jamoussian*, 2022 WL 538424, at *2;" *see Azam*, 2024 WL 912516, at *7. Even without a statutorily prescribed time by which the Government must

---

[7] The Court acknowledges that federal district courts across the country differ on the meaning of § 1202 but does not find that it mandates a different result here. *See Azam*, 2024 WL 912516 at *5 (collecting cases and discussing three different interpretations of § 1202).

adjudicate visa applications, courts in this District have found they have jurisdiction if a plaintiff alleges some form of bad faith, deliberate inaction, or improper behavior. *See Azam*, 2024 WL 912516, at *8. Plaintiffs here have not alleged anything more than ordinary, albeit frustrating, garden variety delays in the immigration process and the adverse effects that flow from them. (*See generally* ECF No. 1.) None of Plaintiff's allegations rise to the level of bad faith, deliberate inaction, or improper behavior.

Plaintiffs' last hope at subject matter jurisdiction under the APA or the Mandamus Act is for this Court to find it has jurisdiction even without a legally mandated time to adjudicate. But Plaintiffs—holding the burden to prove subject matter jurisdiction—fail to point to a single case in this Circuit that eliminates the "certain time period" requirement as part of the subject matter jurisdiction analysis. (*See id*. at 15–17.) Therefore, the Court cannot find that § 555(b) or § 706(1) of the APA confer jurisdiction on this Court. (*See* ECF No. 12-3 at 15.)

The prevailing rule in this District is absent a showing of impropriety by Defendants or that an agency is compelled by law to act within a certain time period, the Court lacks jurisdiction. *Kale*, 2021 WL 2652124, at *4; *see also Jamoussian*, 2022 WL 538424, at *2 (APA confers jurisdiction to compel an agency to act when the law mandates action within a certain time period); *see also Norton*, 542 U.S. at 64. "[A]bsent a 'specific time frame for adjudication . . . Congress did not intend to limit the discretion' of the State Department with respect to the time, place, and manner in reviewing and adjudicating visa applications." *Azam*, 2024 WL 912516, at *8 (citation omitted). Courts in this District have also found the lack of explicit statutory or regulatory timeframe within the INA context especially "significant" as the INA does time-limit certain other actions. *E.g., Banerjee*, 2023 WL 8068092, at *8 (citing 8 U.S.C. § 1447(b) ("If there is a failure to make a [naturalization] determination under section 1446 of this title before the end of the 120-

11

day period. . . .")). Congress has conferred great discretion on the Executive Branch in the immigration context. And the State Department's discretion to process visa applications on its own timeline and according to its own priorities is a prime example. *See Azam*, 2024 WL 912516, at *8 ("[T]he agency's duty to resolve matters presented to them within a reasonable time must be considered in the context of the wide discretion the State Department retains relating to the time, place, and manner of visa petition adjudication." (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999))).[8]

In light of the language of the INA and the guidance from courts in this District, this Court concludes that it does not have jurisdiction here to review the *reasonableness* of any delay in the Government's adjudication decision under Section 1202. Therefore, Plaintiffs claim must be dismissed for lack of subject matter jurisdiction under the APA and the Mandamus Act.

## B.  JUSTICIABILITY

Even assuming *arguendo* the Court had subject matter jurisdiction over the Complaint, Plaintiffs lack standing to pursue this matter because the Court cannot compel Defendants "to make yet another 'final decision' on the already-refused visa application." *See Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *6 (D.C. Cir. July 24, 2024) (per curiam).

Defendants contend that "the matter is moot" because "the visa application has already been adjudicated, as it was refused under 8 U.S.C. § 1201(g)." (ECF No. 12 at 11.) Plaintiffs insist

---

[8] Nonimmigrant visa applications from countries that are state sponsors of international terrorism, such as Iran, most go through additional review and processing. 8 U.S.C. § 1735. Before a nonimmigrant visa can be issued in these circumstances, "the Secretary of State [must] determine[], in consultation with the Attorney General and the heads of other appropriate United States agencies, that such alien does not pose a threat to the safety or national security of the United States." § 1735(a). Congress has not set out a time for making these determinations, thus effecting a likely even longer process for individuals in which § 1735 applies. *Rezaeirad v. Blinken*, No. 23-1182, 2024 WL 3792537, at *5 (D.D.C. Aug. 12, 2024) (citation omitted).

that there are no mootness problems here because Defendants' actions on the visa application amount to nothing more than a "temporary" refusal. (ECF No. 12-3 at 3.)

Although often confused, "standing and mootness are distinct justiciability doctrines" with different jurisdictional burdens. *Hartnett*, 963 F.3d at 305; *Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 204 (3d Cir. 2022) ("The difference is not merely one of semantics."). Standing is assessed at the start of the litigation while mootness examines whether there is a live case throughout all stages of the judicial proceeding. *Zuch v. Comm'r of Internal Revenue*, 97 F.4th 81, 93 (3d Cir. 2024); *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022). The distinction is important here because burden to show standing rests with the plaintiff, while burden to show a case is moot is borne by the defendant. *W. Virginia*, 597 U.S. at 718–19.

The standing inquiry considers "injury in fact, causation and redressability." *Hartnett*, 963 F.3d at 305. In other words, a plaintiff must prove they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Associated Builders & Contractors W. Pennsylvania*, 81 F.4th at 287 (citation omitted). Importantly, the injury "must actually exist," *id*., and the relief requested cannot have a defendant do "which it has already done." *See Zevallos v. Obama*, 10 F. Supp. 3d 111, 123 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015) (dismissing claim under Rule 12(b)(1) when requesting agency to take action it has already taken). Cases are moot when the defendant can show developments *during* a litigation "eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief." *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017). But a defendant must overcome a "heavy burden" in showing there is no longer a live case or controversy. *Zuch*, 97 F.4th at 93.

Here, standing is the more appropriate lens through which to view Defendants' challenge. *See Ebrahimi v. Blinken*, No. 23-3867, 2024 WL 2020038, at *4 (N.D. Ill. May 3, 2024) (reframing mootness argument as standing when the basis is an event occurring *prior* to the litigation commencing). Therefore, the proper inquiry is whether Plaintiffs have proven they have standing to bring this matter by showing a decision has yet to be made on their visa application. *See Onuchukwu v. Clinton*, No. 10-1490, 2010 WL 3614217, at *2 (D.N.J. Sept. 7, 2010), *aff'd*, 408 F. App'x 558 (3d Cir. 2010) ("As long as the State Department considers the merits of an application for an immigrant visa, this Court may not alter or even review the Department's decision.") (citing *Elhabash v. United States Dept. of State*, No. 09–5847, 2010 WL 1742116, at *2 (D.N.J. April 27, 2010)).

Here, Plaintiffs must prove they suffered injuries resulting from Defendants' "unreasonable delay" in adjudicating Plaintiffs' visa application. (ECF No. 1 ¶¶ 11, 23.) Although framed in terms of both declaratory and injunctive relief, Plaintiffs' requested relief is to compel Defendants to adjudicate Plaintiffs' K-1 visa application. (ECF No. 1 at 32–33.) For this to be redressable, the relief requested must be something the Court has the power to order. Therefore, standing turns on whether Plaintiffs have shown that Defendants have not fully discharged their mandatory duty to review and adjudicate the visa application pursuant to § 1202. Otherwise, if the Court finds that Defendants have fulfilled their duties under § 1202, Plaintiffs would neither have an injury-in-fact nor would the purported injury be redressable.

Defendants contend that the visa application was already refused under § 1201(g), (ECF No. 12 at 11), while Plaintiffs assert this is merely a temporary or quasi-refusal, (ECF No. 12-3 at 7–10). The analysis starts with decisions of other courts in this District. In *Elhabash*, a nonimmigrant visa application was refused pursuant to INA § 221(g) for further administrative

processing and was subject to reconsideration "without submission of another visa application." 2010 WL 1742116, at *1 (applying 22 C.F.R. § 41.121(a)). That court concluded that they are "without jurisdiction to hear the case because the Embassy has denied his visa application pursuant to INA § 221(g)" and the recourse is to await reconsideration after administrative processing is complete. *Id.* at *3. Another court in this Circuit concluded it lacked jurisdiction for the same reason. *See Denisova v. Mayorkas*, No. 23-01902, 2024 WL 2043664, at *3–4 (W.D. Pa. May 8, 2024) ("The facts of this case directly mirror those present in *Elhabash* . . .[:] the consular officer's action in refusing Mr. Denisov's application constituted a final agency decision" that left no "live case or controversy affecting the parties before the Court."). The Court of Appeals for the Third Circuit has not addressed whether a refusal under INA § 221(g) for administrative processing fulfills the Government's adjudicatory duty, but the Court of Appeals for the District of Columbia has. Their view follows *Elhabash* and *Denisova*: an application refused and placed in administrative processing is officially refused. *See Karimova*, 2024 WL 3517852, at *3, *5 (finding an application placed in administrative processing does not require a court to compel the Government "to make yet another final decision on [an] already-refused visa application" (internal quotations omitted)).[9]

Another court in this District did, however, come to a different conclusion under divergent circumstances. *See Assad v. Holder*, No. 13-117, 2013 WL 5935631 (D.N.J. Nov. 1, 2013).[10] The high-level facts are the same: plaintiff was denied a visa pursuant to INA § 221(g) for

---

[9] Unfortunately, *Karimova* did not even resolve these questions within the D.C. Circuit. *Compare Ibrahim, v. Spera*, No. 23-3563, 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) ("[O]ne cannot read *Karimova* as saying anything other than a 221(g) refusal and placement in administrative processing was a conclusion."), *with Hajizadeh v. Blinken*, No. 23-1766, 2024 WL 3638336, at *3 (D.D.C. Aug. 2, 2024) ("This court has considered *Karimova* but declines to follow it.").

[10] As of the filing of this Opinion, *Assad v. Holder*, notwithstanding it being from 2013, has never been cited, either positively or negatively, in another opinion in this Circuit.

"administrative review."[11] *Assad*, 2013 WL 5935631, at \*1. But importantly the refusal letter provided to the visa applicant in *Assad* indicated the plaintiff was "*temporarily* . . . ineligible to receive a visa under Section 221(g) of the Immigration and Nationality Act." *Assad*, No. 13-117 (D.N.J. Jan. 7, 2013), Ex. 6 to ECF No. 1 (emphasis added). The court found the letter's language "clearly indicate[d] that the decision on [the plaintiff's] visa is still pending and not final." *Assad*, 2013 WL 5935631, at \*4. In that case, Defendants also failed to comply with refusal procedures under 22 C.F.R. § 42.81(b). *Id.* But both of those critical facts are not present here: Plaintiffs' letter did not indicate the refusal was temporary and § 42.81(b)'s immigrant refusal procedures are not applicable to Barazandeh as a nonimmigrant.

Section 41.121(a) provides that "[n]onimmigrant visa refusals must be based on legal grounds, such as . . . INA 221(g) . . . or other applicable law." 22 C.F.R. § 41.121(a). As alleged here, Plaintiffs' application was refused pursuant to INA § 221(g). (ECF No. 1 ¶¶ 7, 82; ECF No. 1-3 at 2.)

Utilizing a string citation of over a page, Plaintiffs point the Court to twelve decisions, all but one of which are out of Circuit. (*See* ECF No. 12-3 at 10–11 (citing cases).) Six of the decisions are from the District Court for the District of Columbia and occurred prior to the D.C. Circuit's *Karimova* decision. Nevertheless, the Court notes that there remains no majority view within that district. *See supra* note 9. This leaves four remaining cited decisions: a 2019 decision in the Eastern District of California, a 2019 decision in the Southern District of Ohio, a 2018 decision in the Southern District of New York, and a 2012 decision in the Middle District of Florida. None dictate a different outcome. The first two cases involve different procedural postures: a temporary restraining order, *Mohamed v. Pompeo*, No. 19-01345, 2019 WL 4734927 (E.D. Cal. Sept. 27,

---

[11] The Court assumes "administrative processing" and "administrative review" mean the same thing.

2019), and default judgment. *Alwan v. Risch*, No. 18-0073, 2019 WL 1427909 (S.D. Ohio Mar. 29, 2019). In contrast to the case at bar, the *Alwan* plaintiffs were promised a "final decision" by a certain date. *Id*. at \*3. Finally, all four cases found a final decision was not reached because of noncompliance with *immigrant* refusal procedures under 22 C.F.R. § 42.81(b). Regardless, Plaintiffs' string citation of cases did not provide the Court with any detail or argument as to why those cases should be followed, especially over the equally long list of cases coming out the other way, which include cases within this Circuit and District. *See e.g., Elhabash*, 2010 WL 1742116, at \*3; *see also Denisova*, 2024 WL 2043664, at \*3–4.

Further, the Court is not persuaded by Plaintiffs' heavy reliance on the Foreign Affairs Manual ("FAM"). *Aminzadeh v. Blinken*, No. 24-02025, 2024 WL 3811153, at \*6 (C.D. Cal. Aug. 9, 2024) ("Foreign Affairs Manual . . . lacks the force of law."); *see also Hayes v. Harvey*, 903 F.3d 32, 46 (3d Cir. 2018) (noting "guidance documents lack the force of law"). Plaintiffs rely on the FAM to indicate § 221(g) refusals are "quasi-refusals" and "not final." (*See* ECF No. 12-3 at 7–11.) But 9 FAM § 403.10-3(C) covering quasi-refusals govern situations in which "the applicant decides not to make a formal application." This is not one of those situations. Plaintiffs also cites to § 504.11, but this section governs immigrant visa applications rather than those of nonimmigrants. (*See, e.g.*, ECF No. 12-3 at 7–9.)

As Plaintiffs note § 403.10-3(A)(2)(2)(b) specifies, "For an INA 221(g) [nonimmigrant visa] refusal . . . the letter must: Not state that the denial is 'pending', 'temporary', or 'interim' or that the case is suspended, although it may reference further administrative processing of the case." (ECF No. 12-3 at 9.) This provision of the FMA does not support their cause, even if the Court provided it any weight. Plaintiffs attached their refusal letter to the Complaint as Exhibit C, which makes no mention of a pending, temporary, or interim refusal. (ECF No. 1 ¶ 82; ECF No. 1-3.)

Neither these FAM references, nor any of the others contained in the Complaint or Opposition, can overcome the weight of evidence indicating that the Government discharged their duty under § 1202 in denying Plaintiffs' application pursuant to INA § 221(g). Therefore, Plaintiffs do not have standing to have this Court compel the Government to do something they have already done: adjudicate Plaintiffs' nonimmigrant visa application.

Therefore, even if APA and Mandamus Act jurisdiction did not bar the claims, Plaintiffs have not sufficiently alleged standing, providing an independent ground for dismissal under Rule 12(b)(1).

### C.    UNREASONABLE DELAY

In addition to the Court's finding of a lack of subject matter jurisdiction and standing, consistent with *Azam*, the facts here fail to properly allege an unreasonable delay, thus Federal Rule of Civil Procedure 12(b)(6) provides an additional basis for dismissal of this case.

Defendants move to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) arguing "there has been no unreasonable delay in this matter" because the factors used "to evaluate a claim of unreasonable delay tilt in favor of Defendants." (ECF No. 12 at 2, 12.) In opposition, Plaintiffs argue that the delay is unreasonable, it creates grave consequences for them, and Defendants' difficulties in adjudicating are unavailing. (*See* ECF No. 12-3 at 17–25.)

In order for a complaint to survive dismissal under 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation and citation omitted). In assessing the reasonableness of a delay, courts apply the *TRAC* factors: (i) length of time elapsed since the agency had a duty to act; (ii) the reasonableness of the delay in the context of the statute; (iii) consequences of the agency delay; and (iv) administrative difficulties associated with the delay. *See Azam*, 2024 WL

912516, at *9 (quoting *Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 123 (3d Cir. 1998)). The Court—in applying the *TRAC* factors in a light most favorable to the Plaintiff—would join other courts in the District in finding an "unreasonable delay" was not pled under similar circumstances. *See Azam*, 2024 WL 912516, at *9–10; *see also Jamoussian*, 2022 WL 538424, at *2 (collecting cases and indicating no "bright lines").

Starting with the length of the delay, even if the Court agrees with Plaintiffs that "delay is properly calculated from [October 25, 2022,] the date Plaintiffs' K-1 visa application was created," (ECF No. 12-3 at 18), it still "falls well within the bounds of delays that other courts have found reasonable." *See, e.g., Azam*, 2024 WL 912516, at *10 (finding delays between three and five years not unreasonable); *see also Dyvonyak v. Mayorkas*, No. 23-16528, 2024 WL 3520058, at *3 (N.D. Ill. July 24, 2024) (determining delay of over two years not unreasonable); *see also Aghazadeh v. Garland*, No. 23-3150, 2024 WL 3617468, at *5 (D.D.C. Aug. 1, 2024) (noting "twenty-seven months (2.25 years) is well within the bounds of that which other courts have found reasonable"); *see also Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (finding a thirty-month delay is not unreasonable); *see also Chang v. United States Dep't of State*, No. 23-1918, 2024 WL 3161895, at *3 (W.D. Wash. June 25, 2024) (noting "in the immigration context, it is commonplace for courts to hold that a delay of less than four years is not unreasonable").

Similarly, the reasonableness of the delay favors Defendants as Section 1202(b) does not time-limit the adjudication of visa applications. As noted earlier, Defendants here are entitled to considerable discretion to make immigration-related decisions, including "to set the time, place, and manner of visa application adjudication." *See Azam*, 2024 WL 912516, at *10; *see also supra* Section III.A.2.b. As for consequences of delay, the Court reiterates its sympathies for Plaintiffs but notes the predicament is not unique and the Court cannot expedite Plaintiffs' visa application

over other similarly situated applicants. *See Azam*, 2024 WL 912516, at *11 (citing *Ali v. United States Dep't of State*, 676 F. Supp. 3d 460, 471 (E.D.N.C. 2023)). Finally, with respect to administrative difficulties, the Court—consistent with the wide discretion afforded to Defendants—declines to tell Defendants how to do their job and prioritize resources. Therefore, the facts as plead do not state a claim for unreasonable delay under the APA, thus warranting dismissal under Federal Rule of Civil Procedure 12(b)(6) as well.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**, and the Petition for Writ of Mandamus and the Complaint are dismissed. An appropriate Order accompanies this Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: September 30, 2024